## No. 1156.

### MRS. G. J. DAVIE AND HUSBAND VS. MRS. BETTIE SCRIBER ET AL.

1.  Under the Act of April, 1853, and the Constitution of 1864, the clerk had no authority to· grant an order of seizure and sale.
2.  Article 990, Code of Practice, does not contemplate sales of property of estates made at the instance of succession representatives, but such as are applied for by creditors only.
3.  Under the provisions of the Constitutions of 1845, 1852 and 1864, and statutes enforcing them, clerks had jurisdiction and authority to grant orders for the sale of succession property.  12 Ann. 56, Succession of Boyd; 21 Ann. 505, Wood vs, Lee.
4.  The clerk having been possessed of jurisdiction to grant the order, same protects the adjudicatee and subsequent purchasers.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*C. J. & J. S. Boatner* for Plaintiff and Appellant.

*Franklin Garrett* for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J.  Plaintiff, as forced heir of Francis Sheppard, whose intestate succession was opened in the parish of Ouachita in 1863, and of which his surviving widow qualified as the administratrix, sues for the revocation of a judicial sale of certain real estate of which the decedent died possessed, and which is alleged to consist of an undivided one half interest in a certain plantation situated on Bayou de Siard, of four hundred acres, and which is alleged to have been appraised in the inventory at $8 per acre, or $3,200.

She alleges that she was a minor at her father's death.  That on the·

28th of September, 1867, upon the application of the attorneys of Samuel L. Sheppard—an alleged creditor of the said succession—the clerk of the Twelfth District Court for the Parish of Ouachita rendered an order directing the sheriff to sell all the property of said estate, or so much thereof as should be necessary to satisfy his claims. The property was adjudicated to R. G. Cobb, on the 4th of January, 1868, from whom, by several mesne conveyances, defendant acquired title, under which she now holds. Plaintiff alleges that the adjudication was an absolute nullity, and conveyed no title, because, among other reasons assigned, "the clerk of the court who granted the order prayed for, was *absolutely without* authority or jurisdiction to entertain the same, or to make any order thereon," and she prays judgment accordingly.

The different defendants and warrantors respectively tendered various exceptions, and answers subsequently and calls in warranty, in which they substantially assert the legality of the order of sale complained of and the consequent legality of the adjudication to R. G. Cobb.

The decision of this case must depend upon the legality, or the illegality, of the order of sale, as it, in our opinion, is the only question propounded by the plaintiffs that can seriously affect defendant's title.

Plaintiff's counsel relies upon 12 Ann. 68, Mason's ex'rs vs. Fuller, as authority for the position he has assumed. In that case plaintiff enjoined what the Court considered as an order of seizure and sale. The Court say: "In pursuance of the Article of our present Constitution (1852), the Act of April, 1853, empowered the clerks of courts, amongst other things, "to grant orders for the sale of succession property. We interpret this to mean *such orders as* are required, or are asked for by curators, administrators and executors in the regular course of their administration; *such orders* as they ask for the sale of so much property as may be necessary to pay the debts in general, which are exigible; orders which are therefore properly granted *ex parte*.

"Here the applicant for the order is not an executor, but a creditor acting *adversely* to the executor; that is, he seeks to compel a sale of the property under the administration of the executor   *   *   *   and, finally, the order is *not* to sell *property* of the succession to pay debts *in general*, but to sell a *specific piece* of property on which a vendor's privilege is claimed, to pay by preference a specific debt, held by the creditor who seeks to procure the order, in a petition drawn up nearly in the form of a petition for a seizure and sale.

"The creditor should have resorted to the district court either to

procure an order of seizure and sale, or a rule on the executor to show cause why the property should not be sold according to Articles 991 and 992 of the Code of Practice."

Article of Code of Practice 990 provides that it shall be the duty of the several *judges* of probate, "upon the *application of the creditors, or any creditor*, of a vacant estate, to cause \* \* \* so much of the property of the said estate as may be necessary to pay the debts of the same *that may be due*, to be offered for sale," etc.

This article does not contemplate sales of succession property made at the instance of succession representatives. They are governed by provisions of the Civil Code. The sales contemplated in said articles are such *only* as may be provoked by creditors. 33 Ann. 471, Succession of Hood; 16 Ann. 420.

Under the provisions of the Constitutions of 1845, 1852 and 1864, the Legislature had power to vest in clerks of courts authority to grant such orders, and do such acts as they should deem necessary for the furtherance of the administration of justice.

Act 56 of 1855, conferred upon the clerks of the several district courts the power "*to grant orders for the sale of succession property.*"

In 12 Ann. 611, Succession of Boyd, the Court said: "The Constitution has authorized the Legislature to confer the power upon clerks to make certain *judicial* orders. These orders, when rendered by the clerk in the special cases authorized, have *precisely the same* effect as they would have if rendered by the judge himself under the same circumstances."

Under the Constitution of 1845, Act 141 of 1850 declared "that the clerks of the several district courts shall have power to grant orders for the sale of property of successions."

This statute was examined and passed upon by this Court's predecessor in Woods vs. Lee, 21 Ann. 505, in which they say: "This is an action by the heirs of E. E. Wood to annul the probate sale of a tract of land \* \* \* made on the 28th of February, 1851, to one Joseph D. Lee, from whom the defendants acquired, on the following grounds, viz:

"*First.* The order of sale is insufficient, and void *because* the *clerk had no authority to make* it."

Again: " The order of sale in this case was made by the clerk who was specially authorized thereto by the Act of 1850, p. 100, and it had the same effect as if made by the judge."

That case is precisely in point. As the clerk had jurisdiction, his order protects the adjudicatee and all subsequent purchasers. 14 Ann. 622, Succession of Guiney; 21 Ann. 507, Woods vs. Lee.

Judgment affirmed.