BREAUX, C. J.
This is a petitory action instituted by plaintiff to recover lands for its ward, Elenore Pochelu, claimed by plaintiff as belonging to her by inheritance from her late father, Raymond P. Pochelu. He died testate, a fact which plaintiff wishes to pass over and ignore.
The defendant interposed an exception to ■the petition, alleging, among other defenses, that plaintiff cannot prosecute this action, the succession being in the possession of the testamentary executor; that the succession was accepted for the minor, with benefit of inventory; that it was in debt, and that the property plaintiff seeks to recover was sold to pay debts on July 18, 1896, and adjudicated to Eugene Esquinance, under whom the defendant holds, and the proceeds were, defendant avers, applied to the payment of the debts of the succession; that the minor, plaintiff, is not the heir at law of the decedent, and cannot maintain this suit as an heir at law; that the probate sale cannot be attacked collaterally, but by the executor in office; that there was no tender made of the purchase price, an essential step; and that any attack on the sale is barred by the prescription of five years.
The pertinent facts, in deciding the points presented by the exception, are that the clerk of court probated the will of Pochelu without having required an affidavit of the proponent or his counsel that the judge was absent from the parish of St. Tammany, in which the succession was opened; that he some time afterward gave the order to sell the property involved in this suit, again without requiring an affidavit showing the absence of the district judge from the parish; and, furthermore, that the petition for the sale was not accompanied by a schedule of debts, as required by Act No. 43, p. 54, of 1882, and Act No. 13, p. 11, of 1894.
Another .of plaintiff’s grounds in the argument is that the property was illegally offered for sale, and, the sale failing for want of satisfactory bid, it was readvertised on the same terms by instruction of the executor.
The defendant sought to supply the affidavit by oral testimony as follows: The judge of the district testified, substantially, that he was not in the parish at the date of the orders. The clerk also testified he did not recall the fact that such an affidavit had- been *893 filed, but testified as to bis custom not to issue orders without the affidavit.
The court referred the' exception to the merits.
Defendant by motion prayed for reinstatement of the exception and for a decision thereon, as if it had not been referred to the merits. This the court declined to do.
The defendant answered, reserved the grounds of the exception, and pleaded that he bought the property from George F. Bier-horst in August, 1906, for $10,000. He pleaded the prescription of 5 or 10 years. He called Bierhorst in warranty.
The latter answered, admitting the defendant’s allegations in his answer. He also pleaded the prescription of 8 and 10 years. He alleged that he bought the property on August 19, 1897, from Eugéne Esquinance for $1,400.
Esquinance, called in warranty, answered Bierhorst’s call in warranty, and joined in the exceptions and defenses of the first defendant. He specially averred that he bought the property on the 10th day of July, 1896, at the probate sale of the property of the succession of P. Pochelu. He called the plaintiff and the widow of Pochelu in warranty. This last warrantor, Esquinance, alleged that the succession was not represented, that the executor had died recently, and asked for a delay-in order to have the succession represented and to call its legal representative in warranty.
The court refused to grant the delay asked, but, instead, the court entered an order and directed that Elenore Pochelu, the minor, through the bank, tutor, and Mrs. Lucie An-dirac, widow of Pochelu, be called in warranty.
The Hibernia Bank & Trust Company answered the call in warranty, denying that the minor was bound in warranty, and alleging further that in the event the minor obtained a judgment, before she obtained possession of the property, she would have to refund to Es-quinance the sum of $2,000, the price paid by him for the land, because the amount had inured to her benefit, and had been applied to the payment of debts due by her late father’s succession.
The court on motion struck out this part of the answer, as the whole of the price had not been applied to the payment of the debts.
The widow in her answer to the call in warranty disclaimed all interest in her husband’s succession, the land having been his separate property; averred that she has relinquished the usufruct left to her in her husband’s will.
Judgment was rendered in favor of the defendant.
Exception : The Probate of the Will of the De Cujus.
The plaintiff, as representative of the minor, Elenore Pochelu, has not noticed the disposition contained in the will of her father. It is treated as so much waste paper.
The suit was instituted directly for the property.
She, as an heir at law, has accepted the succession with benefit of inventory, but ignored the bequest in the will which made her the universal legatee.
rl’he justification for thus proceeding is sought in the assertion that the will has never been probated, and that in consequence she cannot be held by any of its terms.
The will was probated in the absence of the district judge from the parish. There was no affidavit found to show that the judge was absent.
If no attempt had ever been made to probate this will, if it had been laid aside as useless or worthless, it would be different; but the least that can be said is that a serious attempt was made to have it probated, and *895 that if not probated in due form, or for want of a required affidavit, it was owing to negligence or oversight, and that it was not due to intention on the part of those by whom it was presented for probate.
The petition was presented to the court by the one named in the will to be the executor. At the executor’s instance, a day was fixed for hearing the evidence; it was heard; the will was decreed probated, ordered executed, and he was authorized to qualify, and did qualify, and letters of executorship were issued to him.
The will became a part of the proceedings in matter of the settlement of the succession.
The alleged executor took charge of the estate and administered to the date of his death, which was not long since. He had seisin of the property, and performed all the functions of an executor. He was appointed to assist the court, and as such received recognition.
We would have to pause a long time Before arriving at the conclusion that the proceedings up to the date of the sale, to which we will refer in a moment, were void in so far as relates to innocent third persons. They may be null, but are not void. The heir cannot be heard to plead that they are not in the least binding on the succession; that whatever was done was void. To declare such acts void would introduce an element of chance into proceedings never seriously contemplated.
Plaintiff will have to expressly assail the probating of the will in a direct action.
The legal representative of the succession will have to be made a party, and contradictorily with him it will be determined to what extent he has properly administered the affairs of the succession, and the extent of his liability, if any.
We leave the executor’s tenure to take up the next question.
The grounds of the exception following are germane, and will be considered and decided as one.
They are that the required affidavit was not made showing the judge’s absence before the order of sale was issued; and, further, the petition for the sale was not accompanied by a schedule of debts as required by Statute, Act No. 43, p. 54, of 18S2, and the amending Act No. 13, p. 11, of 1894, passed under provision of article 122 of the Constitution of 1879.
We have noted in our statement of the facts that the judge was unquestionably absent from the parish when the order to sell the property was signed by the clerk of court. We are not by any means certain that an affidavit was ever made. But be that as it may, at this time it is sufficient to state that in our opinion, despite the very serious omission, a direct action will have to be instituted to set aside the proceedings.
Tender as a Condition Precedent.
There was tender due by plaintiff, is another proposition presented by the defense.
The difficulty in requiring a preceding tender grows out of the fact that the amount sometimes is not known; the extent of benefit received is not established. In a number of cases it has been held that tender must be made. In a few eases it has b,een held that plaintiff does not have to make a tender, as it may be claimed by reeonvention. The amount being known in this case, no such difficulty arises. The amount should be tendered.
It is a matter of equity, and the purpose is to protect the purchaser in the matter of his claim if he loses his title.
Direct Suit and Collateral Attack.
The former is required in case of suits to set aside relative nullities; the latter will suffice in absolute nullities.
*897 The question is frequently difficult to solve, as the boundary line between relative and absolute nullities is not clearly marked.
Under our jurisprudence, article 12 of the Civil Code of 1838 (among others on the subject) is pertinent.
This article is traced more particularly to law 5, tit. 14, bk. 1, of the Justinian Code, under which our jurisprudence has taken shape. The doctors of the civil law have sought to classify them in two rules or maxims.
Under the former, the maxim is, “Multa fiere prohibentur; quse si facta fuerint, obtinent fir-mitatem,” in contradiction from the second maxim or rule. Cross on Pleadings, § 277et seq.
It means that there are nullities in their character almost void, if not void, that may be cured, and which in the interest of third persons may he held to have had some effect (if not cured entirely by time and the facts of the case).
In all such cases, the action to set them aside should be direct.
Nullities frequently have some effect, though in character void. It has driven some of the doctors of the civil law to the declaration that there are no absolute nul-lities. That is an exaggeration; it is, none the less, true that an unquestioned act for years upon which innocent third persons have acted in good faith may have effect. Cross on Succession, § 253 et seq.
The second rule or maxim is, “Nullum, nullum effectum habet,” i. e., That which is void has no effect.
The application is not here direct.
The nullity has had some effect. Innocent third persons have bought the property. The nullity may be sufficient to afford good ground to set aside the sale. As they were in good faith, in setting aside the sale, they must, to the extent possible, be reinstated in their rights before the purchase.
The first rule has been followed in our jurisprudence.
In the Grevemberg Case, 44 La. Ann. 400,10 South. 7S0, this court held that effect must be given to the order of sale granted by the judge.
The contention was that the succession was opened in an entirely different parish from that of the residence of the decedent.
The court did not go into an investigation of the question; the decision was that the—
“authorities are uniform, and our jurisprudence consistent and emphatic; such a decree must stand until the same is set aside in due course of law”
—citing Lalaune’s Heirs, 13 La. 431, in which orders of competent courts are so clearly defined and the principles involved so well stated.
Citing also Duson v. Dupre, 32 La. Ann. 896, in which the court said:
“These questions can be looked into and adjudged upon only in a direct action before the same court.”
In another case it was 'decided:
. “This is an attempt to annul a judicial sale in a collateral proceeding. The court did not sustain the action.”
In the Pontelieu Case, 28, La. Ann. 639, it was decided that the appointment of a tutor without a family meeting is not void, and that the absence of the schedule of debts was not ground of absolute nullity.
See, also, Hoover v. Sellers, 5 La. Ann. 180.
The court was clear and emphatic on a point directly pertinent:
Ford’s Heirs v. Mills, 46 La. Ann. 331, 14 South. 845, in which the deputy clerk in matter of an order had assumed to act without authority, the court held that the act could only he inquired into in a direct action.
See, also, Beland v. Gebelin, 46 La. Ann. 326, 14 South. 843; Bankston v. Cypress Co., 117 La. 1053, 42 South. 500.
In the Gaither Case, 46 La. Ann. 286, 15 South. 50, cited by plaintiff with great confidence, the point involved ‘was strictly judicial. There was a complete want of notice *899 to the heir, and still plaintiff sought to hold this heir hound. This was not listened to. A different ground is presented than in the pending ease.
The French law-writers have discussed the question closely. They at some points agree with Louisiana jurisprudence.
Hue, in his first volume, quoted freely from Laurent on the subject. He writes:
“L’aete auquel manque l’une des conditions nécessaíres pour sa vaiidité, existe, ma’is il est nul, ou plutOt il est annuiable e’est-a-dire que la nullité doit étre demandée par les parties intéressées, ou par celle en faveur de qui elle est édictée. La nullité en effet n’opére jamais de plein droit. Quand la loi dit que certains actes sont nuls de droit (exemple: art. 505), cela signifie que le juge doit jprononcer cette nullité sur la demande de eelui valablement & qui Faction appartient.” (Italics ours.) Volume 1, p. 189.
We have not sought to anticipate issues it a direct action be brought. They remain to be determined on the merits.
If the sale be void, it may be decreed in a direct action; if avoidable, it also may be decreed; in either case the effect may be passed upon.
The executor of the estate of Pochelu should be made a party.
For reasons stated, the law and the evidence being in favor of defendant, it is ordered, adjudged, and decreed that the judgment be, and the same is hereby, annulled, avoided, and reversed.
It is further ordered, adjudged, and decreed that the case be dismissed at plaintiff’s costs in both courts as in case of nonsuit.