BOLIN, Judge.
Monsanto Chemical Company, lessee under an oil and gas lease, brought in a producing well in Lincoln Parish. Being unable to ascertain the proper parties to whom royalties from forty acres of the producing unit were payable, lessee deposited the money in the registry of the court and instituted -the present concursus proceedings.
At the time suit was filed there were several ancillary issues involved which have since been eliminated by the pleadings and the stipulations of counsel. There is now before this court only one dispute involving Jesse J. Goldsmith on the one hand as opposed to Eudoxie Jones and the heirs of Tobe Jones on the other hand. Counsel have, by stipulation, agreed as to the interests of all parties in any event, whether the court should rule in favor of Jesse J. Goldsmith or Eudoxie Jones and the heirs of Tobe Jones. The lower court ruled in favor of Eudoxie Jones and the heirs of Tobe Jones, and Jesse J. Goldsmith has appealed.
On November 6, 1926, T. J. Jones (also known as Tobe Jones) executed an authentic instrument, purporting to convey to his daughter, Martha Goldsmith, wife of J. J. Goldsmith, the property involved in this litigation. The consideration for the sale was stated therein to be $400.
In February, 1938, Martha Goldsmith and her husband, J. J. Goldsmith, borrowed some money from a local bank and jointly executed two promissory notes in connection therewith. Apparently the bank and other creditors were threatening foreclosure and Eudoxie Jones, in order to “save” the property, paid the obligations due. In return for the payment of these debts, Martha Goldsmith, on June 1, 1938, executed an authentic act of sale of the disputed property to Eudoxie Jones for the recited consideration of $275.12. Eudoxie says this was the amount of debts she paid for Martha and Jesse. Martha’s marital status was shown in the deed but her husband did not join her in the execution thereof.
It is the position of Jesse Goldsmith that the forty acres became a part of the community of acquets and gains when it was acquired by his wife from Tobe Jones and that the sale of the property from Martha Goldsmith to Eudoxie Jones is null and void since the wife alone could not convey the community property.
It is the position of Eudoxie Jones and the heirs of Tobe Jones that: (1) the purported act of sale from Tobe Jones to Martha Goldsmith was a simulated sale and was null and void since no consideration was paid; alternatively, (2) if the instrument dated November 6, 1926, transferred any title to the property it was a donation *430 and, accordingly, the property became the separate property of Martha Goldsmith, and she could and did convey the property to Eudoxie Jones by virtue of the instrument executed in June of 1938; also in the alternative, (3) that, even if the court should find the property belonged to the community of acquets and gains that existed between Martha Goldsmith and Jesse Goldsmith, any action by Jesse now to annul or set aside the deed or act of sale has prescribed under the provisions of Article 2221 of the Revised Civil Code; also in the alternative, (4) under the facts in the case, and having knowledge of the execution of the deed or act of sale to Eudoxie Jones, Jesse is now estopped from maintaining any action to set aside the deed from Martha Goldsmith to Eudoxie Jones or from asserting or claiming any interest in the property; and finally, (5) Eu-doxie Jones and the heirs of Tobe Jones plead the ten years acquisitive “good faith” possession provided for by Article 3479 of the LSA-Revised Civil Code.
The lower court found the transfer from Tobe Jones to his daughter was not a valid cash sale because no consideration was paid but concluded it was a valid donation; that as such the land was the separate and para-phernal property of Martha Goldsmith and therefore the subsequent transfer of the property by Martha to her mother was valid and binding. Having decided the case on this point the trial judge did not pass on the alternative pleas of prescription or es-toppel.
We think the lower court was in error when it concluded the cash consideration stated in the deed from Tobe Jones to Martha Goldsmith was not paid. In due deference to the esteemed trial judge, for whom this court has the utmost respect, we simply cannot find any evidence to substantiate his finding that at least a substantial portion of the $400 was not paid.
Jesse J. Goldsmith testified under cross-examination he paid Tobe Jones about $400 for this property at the time of the transaction ; that the money was paid in the pres-sence of the clerk of court and the clerk asked him to place the money on the table or some other type of platform; that the clerk counted the money out to Tobe Jones, and same was in denominations of $5’s, $10’s, $20’s, and $l’s.
There is no evidence in the record which contradicts the testimony of Jesse Goldsmith. Counsel for Eudoxie Jones and the heirs of Tobe Jones contend, and the trial court so held, that Martha Goldsmith testified there was no cash consideration paid for subject property. We have diligently searched this record and fail to find any such testimony by Martha Goldsmith. Her testimony under cross-examination was that she never paid Tobe Jones any money for the property. Nowhere in the record is there any testimony by Martha Goldsmith that Jesse J. Goldsmith did not pay any money to Tobe Jones for this property. Her testimony was always, throughout the trial, that she did not know what her husband did and that all she knew was she paid nothing for the property. Martha Goldsmith could not have known, of her own knowledge, whether her husband paid a cash consideration for the property for she was not present at the clerk’s office at the time the deed was actually signed.
Eudoxie Jones testified it was Tobe Jones’ intention to give the property in question to Martha Goldsmith, as it was said he had done for the other children. She admitted under cross-examination this was only her opinion. She did not know this of her own knowledge because she was not present at the time the deed was signed.
Immovable property acquired during the marriage is presumed to be community property (LSA-R.C.C. Art. 2402.) The burden was therefore upon Eudoxie Jones and the heirs of Tobe Jones to show the consideration stated in the authentic act of sale was not paid by either Martha or Jesse Goldsmith. We think they have signally failed in this respect. We conclude the deed from Tobe Jones to Martha Goldsmith, dated November 6, 1926, conveyed *431 the forty acres to the community of acquets and gains then existing between Martha and Jesse J. Goldsmith. Since Jesse Goldsmith did not join his wife in the conveyance to Eudoxie Jones on June 1, 1938, such transfer did not convey a good title. If Eudoxie Jones and the heirs of Tobe Jones are to prevail herein their title must rest upon one of their alternative pleas.
We next consider the plea of ten years acquisitive prescription under LSA-R.C.C. Art. 3479, which provides:
“To acquire the ownership of immov-ables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
There is no evidence in the record that Eudoxie Jones was not in good faith in acquiring the property. She acquired the land from the person she believed to be the owner of the property. She made no examination of the records but accepted the deed from Martha Goldsmith at “face value.” The instrument was in authentic form, regular on its face and was sufficient in every way to transfer title to the land if the vendor had good title thereto.
The possession of Eudoxie Jones and the heirs of T. J. Jones was established without serious contradiction by the testimony of Eudoxie Jones and Shelton Jones as well as that of Jessie Goldsmith. The latter moved off the property in 1938, and has exercised no acts of possession over the property from the time it was deeded to Eudoxie and never questioned the title until the present controversy arose. Shelton Jones, son of Eudoxie and Tobe Jones, actually “looked after” the property, possessing not' only for himself but for all the other co-owners. This forty-acre tract has a house on it which was rented and the entire tract, enclosed with a fence, had been used by Shelton Jones and Eudoxie Jones to pasture cattle.
Appellant, in opposition to the plea of prescription, cites and relies on Hicks, et al. v. Hughes, Jr., et al., 223 La. 290, 65 So.2d 603 (1953). That case was a suit to set aside an administrator’s deed. The defendant therein had acquired one-half interest in the property at an administrator’s sale and had not sold or disposed of the property since he acquired title. The Administrator’s sale had been held under an order signed by the clerk of court without a list of the debts being attached. The court held since there was no list of debts attached to the petition for the sale there was actually no jurisdiction in the clerk to issue an order for the sale, and further held, in answer to the plea of ten years acquisitive prescription, that a judicial sale made pursuant to an order of the clerk who was without jurisdiction was an absolute nullity and could not form the basis for such a prescriptive plea. In Boudreaux v. Olin Industries, Inc., et al., 232 La. 405, 94 So.2d 417 (1957) the Supreme Court limited the holding in the Hicks case to a situation in which the grantee-possessor is claiming prescriptive title under a conveyance which is an absolute nullity. The court relied on a 1926 case stating:
“ * * * it was expressly held in Clayton v. Rickerson, 160 La. 771, 107 So. 569, that a person holding under a deed, although absolutely null when the property was transferred to its vendor, could nevertheless acquire a valid prescriptive title if the title under which he possesses is one that is genuine on its face and translative of the property. * * * ”
*432 See also Callahan v. Authement (La.App. 1 Cir., 1957) 99 So.2d 531, and cases therein discussed.
LSA-R.C.C. Art. 3484 explains what is meant by the term “just title” thusly:
“By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property.”
The case of Smith v. King, 192 La. 346, 188 So. 25 (1939) is factually in point with the case under consideration as relates to the plea of ten years acquisitive prescription. In the cited case Jane Smith acquired property from the Homer National Bank and later sold it to her two sons. Plaintiffs in the suit contended Jane Smith was married to Monroe Smith when she acquired the property and consequently it was community property and could not be conveyed by her without the signature of her husband. The evidence did not definitely establish the date of the death of Monroe Smith. The Supreme Court sustained a plea of ten years acquisitive prescription and held it was immaterial whether he was living or dead when she acquired the property; that the deed whereby she conveyed the property to her sons was valid on its face and conveyed sufficient tile upon which to predicate the plea of prescription.
The test is simply this: if the deed is regular in form and would convey the property if executed by the owner then it is sufficient to support the plea of ten years prescription. Assuming Martha Goldsmith had good title to the property when she executed the deed to Eudoxie Jones in June of 1938, would there be any doubt that she had transferred good title to Eudoxie Jones? An examination of the deed shows it to be regular in form and valid on its face. We think the title thus conveyed was a “just title” sufficient to support the plea of ten years acquisitive prescription.
The case of Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962) has been cited by all counsel. The Monk case is distinguishable on its facts from the case under consideration. In the cited case suit was instituted by a husband against his former wife seeking to be declared owner of an undivided one-half interest in property acquired in the wife’s name during the marriage. By judicial separation the community of acquets and gains was dissolved in 1939. The wife never conveyed the property to anyone. The main thrust of the wife’s claim there was estoppel, which was overruled. As to the plea of ten years acquisitive prescription, the court held it was un-meritorious for the reason the wife held under no deed conveying the contested interest to her. In the case at bar an entirely different situation is presented. Martha Goldsmith in 1938, with the full knowledge of her husband, conveyed the property to Eudoxie Jones by an authentic act valid on its face. For Jesse Goldsmith to prevail in this suit the court must declare the deed from Martha Goldsmith to Eudoxie Jones to be null and void.
. No question has been raised relative to the good faith of Eudoxie Jones. In fact the testimony and the conduct of the parties after the execution of the deed show Eudoxie Jones was in good faith in acquiring the property.
We find all the requirements of LSA-R.C.C. Art. 3479 to have been satisfied and the plea of ten years acquisitive prescription should be, and is, hereby sustained. Under this finding it is unnecessary to pass on the other issues.
In light of the stipulations the lower court correctly decided the ownership of the property but based its decision on an erroneous premise. Under such circumstances the judgment appealed from is amended so as to annul and set aside that *433 paragraph declaring the property conveyed by T. J. Jones to Martha Goldsmith by instrument dated November 6, 1926, to be her separate property and decreeing instead that the ten years prescriptive plea be sustained; and as thus amended the judgment is affirmed as it affects the following property located in Lincoln Parish, Louisiana:
The Southwest Quarter of the Northeast Quarter (SWj4 of NEJ4) of Section 2, Township 19 North, Range 4 West.
It is further ordered that appellant pay the costs of this appeal and that all other costs he paid as shown in the judgment appealed from.
Amended and affirmed.